UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS R. MCPEEK,<br><br>Plaintiff,<br><br>vs.<br><br>CO MEYERS, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CO LUCERO, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UM KLIMEK, EAST CRAWFORD UNIT MANAGER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; LT. DYKSTRA, OFFICER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN MAIL ROOM OFFICER(S), CORRECTIONAL OFFIER(S) AT MIKE DURFEE STATE PRISON, IN HIS/HER INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN BRENT FLUKE, WARDEN AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UC KELLY TJEERDSMA, EAST CRAWFORD UNIT COORDINATOR/OFFICER AT MIKE DURFEE STATE PRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; CO LIVINGSTON, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; DEPUTY WARDEN SCHIEFFER, DEPUTY WARDEN AT MIKE DURFEE STATE PRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN ROBERT DOOLEY, WARDEN AT | 4:20-CV-04078-RAL<br><br><br>1915A SCREENING DISMISSING IN PART AND DIRECTING SERVICE IN PART |

1

| | |
|---|---|
| MIKE DURFEE STATE PRISON IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UNKOWN PROPERTY OFFICER, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HIS/HER INDIVIDUAL AND OFFICIAL CAPACITY; SD BOARD OF PARDONS AND PAROLEES, CORRECTIONAL OFFICER(S)/SOUTH DAKOTA BOARD MEMBER(S) AT SOUTH DAKOTA DEPARTMENT OF CORRECTIONS, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN DARIN YOUNG, WARDEN AT THE &AMP;QUOT;HILL&AMP;QUOT; AND/OR SIOUX FALLS PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; LISA ROTHSCHADL, COUNTY ATTORNEY AT BON HOMME COUNTY, SD, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; MARK PAYER, JAIL ADMINISTRATOR/OFFICER AT YANKTON COUNTY JAIL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; GLEN ENG, JUDGE AT BON HOMME COUNTY COURTHOUSE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND KELLY YOUNG, POLICE OFFICER AT TYNDALL POLICE DEPARTMENT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;<br><br>            Defendants. | |

Plaintiff Travis P. McPeek filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted McPeek leave to proceed in forma pauperis. Doc. 5. McPeek timely filed his initial partial filing fee. This Court must now screen McPeek's complaint under 29 U.S.C. § 1915A.

**I. Factual Allegations of McPeek's Complaint**

McPeek claims that Correctional Officer Meyers inappropriately touched his chest on May 16, 2018. Doc. 1 at 8. He filed a grievance about the alleged occurrence and claims that after he filed the grievance he was handcuffed and forced into a segregation cell while naked. Id.

2

While in segregation, he claims he was denied a Bible and was not allowed to call his attorney or his mother. Id. McPeek claims that he was told that he was placed into segregation because he filed the grievance. Id.

He alleges that his personal mail has been denied on several occasions without notification. Id. at 10–13. McPeek asserts that his personal mail has been confiscated because the mail policy is vague and overbroad. Id. at 13. He claims that Unit Coordinator Kelly Tjeerdsma has taken away his legal copies and case law as well as his phone access making McPeek unable to contact his attorney and causing McPeek insomnia and anxiety. Id. at 14, 25. McPeek claims that at the time he was bringing a pro se lawsuit in a federal court in Arizona and that his rejected mail—allegedly including police reports, forensic reports and photographs—and has delayed his court filings. Id. at 15.

McPeek also claims that Bon Homme County Attorney Lisa Rothschadl filed a motion to remove the law library from the Yankton County Jail and that Judge Glen Eng granted the motion. Id. at 27. McPeek asserts that the actions of Rothschadl and Judge Eng have caused the dismissal of his federal and state cases because he was "unable to follow court rules properly" and that the outcome of his underlying state court criminal conviction could have been different. Id. At his underlying criminal trial, McPeek alleges that the jury was biased and he was denied a change of venue. Id. at 28–29. He also claims that the evidence used to convict him was illegally obtained in violation of his Fourth Amendment rights. Id. McPeek wants to "preserve his right" to file a § 1983 complaint after he exhausts the post-conviction process in state and federal courts. Id.

McPeek claims that his property has been confiscated from him and he has not been reimbursed for his losses. Id. at 16–20, 26. McPeek asserts that his Fourteenth Amendment right

3

to due process has been violated by defendants when they took his property: a money transfer of $10.00, socks, $8.00 in tokens, a fraudulent charge for a "capacitor," $25.00 for a fine, and a confiscated cable cord taken during shakedown. Id.

McPeek asserts that Warden Brent Fluke and the South Dakota Board of Parole are abusing their discretion with his parole eligibility. Id. at 24. McPeek also challenges the calculation of his parole eligibility date and claims that he was transferred to the South Dakota State Penitentiary (SDSP) as retaliation for challenging his parole. Id. at 21. He claims that during this transfer he was required to wear shackles, leg irons, and a belly chain in violation of the Eighth Amendment. Id. He alleges that he was placed in a tiny cell with another inmate and the space was so small he could not do a pushup. Id. at 22. McPeek claims that being in such a small cell was torture and that he suffered severe anxiety attacks while in the cell. Id. He also claims that there was prison construction so loud that he may have suffered ear damage. Id. at 23. McPeek claims that this is in violation of the Eighth Amendment and the standards set forth by the Occupational Safety and Health Administration (OSHA). Id. McPeek brings nineteen different "Counts" in his complaint. See Doc. 1. He sues defendants in their individual and official capacities and seeks monetary damages and injunctive relief on all claims except 18 and 19 where he reserved the right to sue. See id. at 2–4, 31–34.

## II. Discussion

### A. Screening and Dismissal Standards

The Court must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain

specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." 550 U.S. at 555; see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now assess each individual claim under 28 U.S.C. § 1915A.

### B. McPeek's Causes of Action

#### 1. Claims against the State of South Dakota

McPeek sues the South Dakota Board of Pardon and Paroles. Doc. 1 at 4. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines

whether its powers were created by state law, the degree of its autonomy and control, and whether it is funded by the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985). According to South Dakota statutes, the Parole Board is a division of the Department of Corrections. SDCL § 24-13-3. The Department of Corrections was created by the state legislature, SDCL § 1-15-1.2, as was the Parole Board. SDCL § 24-13-1. Each member of the Board is appointed "with the advice and consent of the Senate," SDCL § 24-13-1, and their salaries are paid from the state budget. SDCL §§ 24-13-5; 4-7-10.4. The Board controls and supervises all parolees in the State. The Parole Board is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. McPeek's claims against the South Dakota Board of Pardons and Paroles are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).[1]

### 2. Judicial Immunity

McPeek names Judge Glen Eng (a now-retired judge for the First Judicial Circuit for the state of South Dakota) as a defendant and sues him in his individual and official capacity. Doc. 1 at 4. McPeek asserts that Judge Eng allowed for illegally seized evidence to be used to convict him during his underlying criminal conviction. Id. at 28–29. Judges are generally immune from suit if the judge had jurisdiction over the party. See Stump v. Sparkman, 435 U.S. 349, 356–57

---

[1] Because the South Dakota Parole Board is dismissed as a defendant, this Court will not address the claims specifically alleged against it (Counts XI and XIV). Doc. 1 at 21, 24. McPeek claims that that a South Dakota Government Official and Warden Fluke have abused their discretion in retaliations when calculating his parole eligibility. Id. The Eighth Circuit has held that parole board members are absolutely immune from suit for considering and deciding parole questions, whether the decision is based on lawful or unlawful considerations. See Patterson v. Von Rieson, 999 F.2d 1235, 1239 (8th Cir. 1993). Because members of the parole board are also protected, his claims (Counts XI and XIV) against a South Dakota Government Official and Warden Fluke (to the extent that McPeek's claims relate to parole eligibility before the parole board) are also dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

(1978) ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him."). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Id. at 357–58 (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)).

Judges are immune from suit with two narrow exceptions. See Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012). "'First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" Id. (quoting Mireles v. Waco, 502 U.S. 9, 11–12 (1991)). These exceptions do not apply here. Judge Eng had jurisdiction over McPeek when he was being criminally prosecuted by the state of South Dakota, and his actions were taken within his judicial capacity. Thus, McPeek's claims against Judge Eng are dismissed under 28 U.S.C. §§ 1915(e)(B)(i-ii) and 1915A(b)(1).

### 3. Official Capacity Claims

#### a. Employees of the South Dakota Department of Corrections

McPeek sues Correctional Officer ("CO") Meyers, CO Lucero, Unit Manager ("UM") Klimek, Lieutenant ("Lt.") Dykstra, Unknown Mail Room Officers at Mike Durfee State Prison ("MDSP"), Unknown Property Officer at MDSP, Warden Darin Young, Warden Brent Fluke, Warden Schieffer, Warden Robert Dooley, Unit Coordinator ("UC") Kelly Tjeerdsma, and CO Livingston in their individual and official capacities. Doc. 1 at 2–4.[2] McPeek notes that these

---

[2] These defendants will be collectively referred to as South Dakota Department of Corrections ("SDDOC") defendants.

7

individuals work for the South Dakota Department of Corrections. Id. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. See Pearson v. Callahan, 555 U.S. 223, 242–43 (2009). Here, McPeek seeks to recover money damages. Doc. 1 at 31–34, through suing SDDOC defendants in their official capacities, and thus, McPeek has effectively asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, to the extent McPeek seeks to hold SDDOC defendants liable in their official capacities for money damages, the SDDOC defendants are protected by sovereign immunity and are entitled to judgment as a matter of law.

### b. Employee of the Tyndall Police Department

McPeek sues Kelly Young, a police officer for the Tyndall Police Department in her individual and official capacity. Doc. 1 at 4. Claims against the Tyndall Police Department are the equivalent of a lawsuit against the City of Tyndall. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). A municipal government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). McPeek does not allege that the City of Tyndall has unconstitutional policies or customs; thus, his claims against Kelly Young in her official capacity are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### c. Employee of Bon Homme County

McPeek sues Lisa Rothschadl, a Bon Homme County State's Attorney, in her individual and official capacity. Doc. 1 at 4. Claims against Rothschadl in her official capacity are the equivalent of a lawsuit against Bon Homme County. See Veatch, 627 F.3d at 257. A county may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell, 436 U.S. at 694. McPeek does not allege that Bon Homme County has unconstitutional policies or customs; thus, his claims against Rothschadl, in her official capacity, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### d. Employee of the Yankton County Jail

McPeek sues Mark Payer, the Office Administrator at the Yankton County Jail, in his individual and official capacity. Doc. 1 at 4. Claims against Payer in his official capacity are the equivalent of a lawsuit against Yankton County Jail. See Veatch, 627 F.3d at 257. The Eighth Circuit has held that "county jails are not legal entities amenable to suit." Owens v. Scott County Tail, 328 F.3d 1026, 1027 (8th Cir. 2003) (citing De La Garza v. Kandiyohi County Jail, 18 Fed. Appx. 436, 437 (8th Cir. 2001)). Thus, McPeek's claims against Payer, in his official capacity are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

9

#### 4. Individual Capacity Claims

#### a. Access to the Courts

In Counts I, IV, V, XV, and XVII, McPeek alleges that his First Amendment right to access the courts has been violated. Doc. 1 at 9, 14, 15, 25, 27. "The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 347 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015).

An actual injury cannot be established if the law library or legal assistance program is merely "subpar," but the inmate:

> must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 351. In Count I, McPeek vaguely references his right to access to the courts when he claims that he was in a segregation cell and was not allowed to call his attorney. Doc. 1 at 8. McPeek does not allege an actual injury that occurred from not being able to call his attorney; thus, his access to the courts claim in Count I is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

In Count IV, McPeek alleges that Tjeerdsma took his copies of case law and what he refers to as "legal work" and that this has caused him insomnia and mental anguish. Doc. 1 at 14. In Count XV, McPeek claims that Tjeerdsma took away his phone privileges and he was unable to call his attorney to talk about pending legal matters. Id. at 25. In both Counts VI and XV, McPeek fails to allege that a non-frivolous legal claim had been frustrated or impeded; thus, his access to courts claims in Count IV and XV against Tjeerdsma are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

In Count V, McPeek claims that Livingston and Fluke rejected his inmate mail (allegedly containing police and forensic reports) that he needed for a federal pro se lawsuit in Arizona. Doc. 1 at 15. McPeek argues that the rejection of this mail has caused him delays in his court filings. Id. This Court has previously addressed that a delay in filing without more does not give rise to an actual injury. See Cody v. McDonald, No. 4:14-CV-04155-RAL, 2016 U.S. Dist. LEXIS 32121, at *9–10 (D.S.D. March 14, 2016) (citing Johnson v. Barczak, 338 F.3d 771, 773 (7th Cir. 2003)) (finding that a one-year delay caused by prison officials did not affect plaintiff's ability to pursue the case because "a delay becomes an injury only if it results in 'actual substantial prejudice to specific litigation'"); Purkey v. Green, 28 F. App'x 736, 742 (10th Cir. 2001) (finding that because plaintiff was able to file his claims that "[a]t worst, defendants' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of [plaintiff's] claims"). Thus, McPeek's access to the courts claim in Count V against Livingston and Fluke is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

In Count XVII, McPeek claims that Bon Homme County Attorney Rothschadl and Jail Administrator Payer through their actions—Rothschadal allegedly filed a motion to remove the law library and Payer acted on the granted motion—have removed the law library from the

Yankton County Jail. Doc. 1 at 27. McPeek alleges that because of these actions his state and federal cases were dismissed because he was unable to properly follow court rules and if he would have had access, it could have produced a possible different outcome in his criminal matters. Id. At this stage, the Court must assume the facts alleged are true. A complete removal of the law library at the Yankton County Jail cannot be considered merely a "subpar" library, but a complete denial of McPeek's ability to litigate his claims as a pro se party. See Lewis, 518 U.S. at 351. Thus, McPeek has alleged enough facts to support a denial of access to the courts claim in Count XVII against Payer because he claims the complete removal of the law library caused his lawsuits to be dismissed. However, McPeek's claim that Bon Home County Attorney bears responsibility for removal of the Yankton County Jail's library is too far afield to survive screening. McPeek's access to courts claim in Count XVII against Payer in his individual capacity survives §1915A screening.

### c. Fourteenth Amendment Due Process Clause Claims

McPeek claims that certain defendants have violated his Fourteenth Amendment due process rights because he has allegedly been deprived of property without due process. See Doc. 1. McPeek alleges that: (1) his money transfer of $10.00 was never refunded by Schieffer (Claim VI); (2) Tjeerdsma and Fluke confiscated socks that he had purchased and never reimbursed him for the confiscation (Count VII); (3) Tjeerdsma and Fluke confiscated $8.00 worth of tokens from him (Count VIII); (4) Warden Dooley and the Unknown Property Officer fraudulently charged him for a "capacitor" for a rental television (Count IX); (5) Tjeerdsma sanctioned him a $25.00 fine for receiving a tattoo even though there allegedly was no proof that McPeek was getting a tattoo (Count X); and (6) Tjeerdsma confiscated a cable cord during a shakedown (Count XVI). Id. at 16–19, 20, 26.

It is well established that if there is an adequate state postdeprivation remedy, then there is no due process violation for even the intentional deprivation of a prisoner's property. Hudson v. Palmer, 468 U.S. 517, 533 (1984). Because state law provided the prisoner in Hudson with adequate state remedies after the deprivation of his property, the Court held that no due process violation occurred in that case. Id. at 535. Here, SDCL § 21-3-3 provides an adequate postdeprivation remedy. This statute provides a cause of action for wrongful conversion of personal property. See SDCL § 21-3-3. Section 21-3-3 provides a description of the damages available for conversion, but the tort of conversion is a common law tort not defined in the statute. Rensch v. Riddle's Diamonds of Rapid City, Inc., 393 N.W.2d 269, 271 (S.D. 1986). "Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 766 (S.D. 2002). The common law and SDCL § 21-3-3 provide McPeek with an adequate postdeprivation remedy for the conversion of his property. Thus, there is no due process violation. Hudson, 468 U.S. at 535. McPeek's due process claims (Counts VI, VII, VIII, IX, X, XVI) are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and he is free to address those alleged deprivations in state court under state statutes.

### c. Eighth Amendment Conditions of Confinement

In Counts XII and XIII, McPeek mentions the Eighth Amendment and claims that the conditions of his cell were unconstitutional. Doc. 1 at 22–23. "[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 83 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's

necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation marks omitted). In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004); Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. Villanueva, 659 F.2d at 854; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989). In Burks v. Teasdale, the Eighth Circuit noted that "[w]e do not hold categorically that putting two men in a cell with a floor space no larger than 65 square feet either is or is not constitutionally permissible. We think that a good deal may depend on the type of institution involved, the nature of the inmates, and the nature of the confinement itself." 603 F.2d 59, 63 (8th Cir. 1979).

In Count XII, McPeek claims that when he was transferred to SDSP, he was assigned to a small cell with another inmate. Doc. 1 at 22. McPeek claims that the cell was so small he could not do a pushup in the cell and there was nowhere to write. Id. He claims that he suffered severe anxiety attacks due to the limited space and claims that being placed in such a small space is torture. Id. Next, in Count XIII, McPeek alleges that there was construction going on at SDSP and

14

the noise of power tools caused him ear pain and a headache. Id. at 23. McPeek claims that Young is responsible for and caused the alleged violations and that he submitted complaints to the staff about the conditions. Id. At this time, McPeek has alleged sufficient facts to show that the cumulative effect of his confinement while at SDSP was unconstitutional and that Young allegedly knew about the conditions. Thus, his Eighth Amendment conditions of confinement claims (Counts XII and XIII) against Young survive § 1915A screening.

### d. Mail Policies

In Counts II and III, McPeek alleges that Fluke (through making the mail policy) and the Unknown Mail Officers have violated his First Amendment right of freedom of expression and association as well as the Fourteenth Amendment due process clause. Doc. 1 at 10-13. McPeek claims that his mail was denied without anyone giving him notice because the mail had pencil, ink, or highlighter on it. Id. McPeek claims that the mail policy is overbroad and vague. Id. At this time, this Court cannot say that these claims are wholly without merit and McPeek's First Amendment and Fourteenth Amendment claims (Counts II and III) regarding the mail policy against Fluke and the Unknown Mail Officers survive § 1915A screening.

### e. Retaliation

In Count I, McPeek asserts a retaliation claim, Doc. 1 at 8, asserting that he was retaliated against for filing a grievance about Meyers inappropriately touching his chest. Id. McPeek alleges that after he filed his grievance, he was handcuffed, forced to get naked, and placed in a segregation cell. Id. He was allegedly told by Klimek that he was placed there because of the grievance he had filed. Id. He brings this claim against defendants Klimek, Meyers, Dykstra, and Lucero. Id. To establish a prima facie case of retaliation, McPeek is required to allege that: (1) he was engaged in constitutionally protected conduct; (2) an official took actions against him that

would deter a similarly situated individual from exercising his constitutional rights; and (3) the official's retaliatory actions were motivated by McPeek's constitutionally-protected conduct. Carroll, 262 F.3d at 850. Normally, a prison grievance procedure is merely a procedural right and does not rise to a protected constitutional right. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

A plaintiff must allege more than a defendant's failure to process the grievances to bring an action under § 1983. Id. Because McPeek has alleged facts that his grievance was connected to a constitutionally protected activity—his right to be free from cruel and unusual punishment in the form of alleged sexual assault by a prison guard—his retaliation claim (Count I) against Klimek, Meyers, Dykstra, and Lucero survives § 1915A screening.

### f. Free Exercise of Religion

McPeek vaguely mentions his freedom of religion in Count I when he claims that when he was denied access to the Bible when held in the segregation cell. Doc. 1 at 8. In order to state a First Amendment claim, McPeek must allege facts tending to show that prison officials have substantially burdened the free exercise of his religion. See Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening one's free exercise of religion means that the regulation "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual religious beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person's] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004) (internal quotation marks omitted). Here, McPeek does not point to a prison regulation that he claims violated his First Amendment

rights, but complains about a single occurrence. Doc. 1 at 8. Thus, McPeek's First Amendment claim in Count I is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### g. Claims Barred by <u>Heck v. Humphrey</u>

McPeek claims that the jury at his state trial was not impartial and that he was improperly denied a change of venue. Doc. 1 at 28. He alleges that Officer Young conducted an illegal search and seizure and that Judge Eng allowed the illegally seized evidence into trial. <u>Id.</u> at 29. In short, McPeek claims that his state conviction was unconstitutional. Under <u>Heck v. Humphrey</u>, "in order to recover damages for [an] allegedly unconstitutional conviction or . . . for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must show that the "conviction or sentence [was] reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." 512 U.S. 477, 486–87, 489 (1994). McPeek has not claimed that his conviction has been reversed, expunged, declared invalid or impugned by the granting of a writ. Thus, McPeek's claims (Counts XVIII and XIC) are barred by <u>Heck</u> and dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III. Order

Accordingly, it is

ORDERED that McPeek's retaliation claim against Klimek, Meyers, Dykstra, and Lucero (Count I) in their individual capacities and official capacities (only for injunctive relief) survives 28 U.S.C. § 1915A screening. It is further

ORDERED that McPeek's access to the courts claim (Count XVI) against Payer (in his individual capacity) survives 28 U.S.C. § 1915A screening. It is further

ORDERED that McPeek's mail policies claims (Counts II and III) against Fluke and the

17

Unknown Mail Officers in their individual capacities and official capacities (only for injunctive relief) survive 28 U.S.C. § 1915A screening. It is further

ORDERED that McPeek's conditions of confinement claims (Counts XII and XIII) against Young in his individual capacity and official capacity (for injunctive relief) survive 28 U.S.C. § 1915A review. It is further

ORDERED that all claims against defendants Tjeerdsma, Livingston, Schieffer, Dooley, Unknown Property Officer, South Dakota Board of Pardons and Paroles, Judge Eng, and Attorney Rothschadl are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that the Clerk shall send blank summons forms and U.S. Marshals Service Form (Form USM-285) to McPeek so that he may cause the complaint to be served upon defendants (Meyers, Lucero, Klimek, Dykstra, Unknown Mail Room Officers, Fluke, Young, and Payer). It is further

ORDERED McPeek shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that McPeek will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

DATED August 31st, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE