UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS R. MCPEEK, <br><br> Plaintiff, <br><br> vs. <br><br> CO MEYERS, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CO LUCERO, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UM KLIMEK, EAST CRAWFORD UNIT MANAGER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; LT. DYKSTRA, OFFICER AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN MAIL ROOM OFFICER(S), CORRECTIONAL OFFIER(S) AT MIKE DURFEE STATE PRISON, IN HIS/HER INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN BRENT FLUKE, WARDEN AT MIKE DURFEE STATE PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UC KELLY TJEERDSMA, EAST CRAWFORD UNIT COORDINATOR/OFFICER AT MIKE DURFEE STATE PRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; CO LIVINGSTON, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; DEPUTY WARDEN SCHIEFFER, DEPUTY WARDEN AT MIKE DURFEE STATE PRISON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN ROBERT DOOLEY, WARDEN AT | 4:20-CV-04078-RAL <br><br><br> OPINION AND ORDER GRANTING DEFENDANT MARK PAYER'S MOTION FOR SUMMARY JUDGMENT |

1

| | |
|---|---|
| MIKE DURFEE STATE PRISON IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; UNKOWN PROPERTY OFFICER, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, IN HIS/HER INDIVIDUAL AND OFFICIAL CAPACITY; SD BOARD OF PARDONS AND PAROLEES, CORRECTIONAL OFFICER(S)/SOUTH DAKOTA BOARD MEMBER(S) AT SOUTH DAKOTA DEPARTMENT OF CORRECTIONS, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN DARIN YOUNG, WARDEN AT THE &;QUOT;HILL&AMP;QUOT; AND/OR SIOUX FALLS PRISON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; LISA ROTHSCHADL, COUNTY ATTORNEY AT BON HOMME COUNTY, SD, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; MARK PAYER, JAIL ADMINISTRATOR/OFFICER AT YANKTON COUNTY JAIL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; GLEN ENG, JUDGE AT BON HOMME COUNTY COURTHOUSE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND KELLY YOUNG, POLICE OFFICER AT TYNDALL POLICE DEPARTMENT, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;<br><br>            Defendants. | |

In 2017, Plaintiff Travis McPeek sued Yankton County Jail Administrator Mark Payer and other individuals under 42 U.S.C. § 1983. McPeek ultimately settled his 2017 case, signing a Release of his claims against Payer and others in exchange for money. McPeek filed this case in 2020, again naming Payer as a defendant. McPeek alleges that Payer violated his right to access the courts by revoking his law library privileges in June 2017. Payer now moves for summary judgment, arguing that the Release McPeek signed bars him from bringing this claim. This Court agrees and thus grants Payer's motion for summary judgment.

I.      Facts[1]

A South Dakota grand jury indicted McPeek in August 2016 for the aggravated assault of a law enforcement officer. Doc. 58-1; Doc. 59 at ¶¶ 1–2. McPeek was not arrested until late December 2016, when police found him in Phoenix, Arizona. Doc. 59 at ¶ 3; Doc. 58-2 at 2. Law enforcement shot McPeek with rubber bullets during the arrest, causing him injuries and requiring that he be hospitalized for a day. 17-4015-RAL,[2] Doc. 74 at 2–3; Doc. 52-1 at 3–4. McPeek began his extradition back to South Dakota in early January 2017. Doc. 59 at ¶¶ 4–5. He arrived at the Yankton County Jail on January 27, 2017, and remained there until June 14, 2017. Doc. 59 at ¶¶ 6–7. A jury ultimately convicted McPeek of two counts of aggravated assault of a law enforcement officer, and a judge sentenced him to twenty-five years in the state penitentiary. Doc. 59 at ¶¶ 8–9.

In February 2017, McPeek filed a § 1983 complaint in this Court alleging that he had been mistreated while being transported from Arizona to South Dakota. 17-4015-RAL, Doc. 1. He filed an amended complaint in March 2017, this time naming Payer as a defendant. 17-4015-RAL, Doc. 8. McPeek alleged that officers at the Yankton County Jail were deliberately indifferent to

---

[1] Payer complied with Rule 56.1(A) of this Court's Local Rules by filing a statement of material facts along with his motion for summary judgment. Doc. 59. Local Rule 56.1(B) required McPeek, the party opposing Payer's motion for summary judgment, to "respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1(B); see also Fed. R. Civ. P. 56(e)(2) (saying that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)"). A failure to respond to the moving party's statement of material facts results in those facts being deemed admitted. D.S.D. Civ. LR 56.1(D). McPeek did not file an appropriate response under Local Rule 56.1(B) to Payer's statement of undisputed material facts. See Doc. 63. Rather, he filed a brief saying that he does not dispute Payer's statement of undisputed material facts "except for the language contained in the Release of all Claims listed in [¶¶] 16 and 17." Doc. 63 at 1. This Court thus draws the facts from Payer's statement of undisputed material facts as well as from the record in McPeek's 2017 case.
[2] Filings from McPeek's 2017 case are cited with the civil case number followed by the docket number, e.g. 17-4015-RAL, Doc. ---.

his serious medical needs and unlawfully placed him in segregation. 17-4015-RAL, Doc. 8; Doc. 9. The March 2017 amended complaint also cited to Payer's response to a grievance and alleged that this response showed that McPeek "does not have adequate access to law library and further supports his request for counsel." 17-4015-RAL, Doc. 8 at 24–25.

On June 9, 2017, McPeek filed a motion to compel the Yankton County Jail to give him access to the law library. 17-4015-RAL, Doc. 28. McPeek alleged that Payer had told the Bon Homme County State's Attorney that McPeek had a lawyer in his state criminal case and therefore no longer needed access to the law library. 17-4015-RAL, Doc. 28. McPeek claimed that the State's Attorney filed a motion to deny him access to the law library, and that, during a June 6, 2017 hearing, a state judge granted this motion even though McPeek's attorney argued that McPeek had several civil cases where he was proceeding pro se. 17-4015-RAL, Doc. 28. According to McPeek, Payer denied McPeek access to the law library to gain an advantage in McPeek's suit against him. 17-4015-RAL, Doc. 28. This Court denied McPeek's motion to compel because McPeek's complaint did not raise a claim that the defendants had denied him access to the courts. 17-4015-RAL, Doc. 31. This Court explained, however, that McPeek could seek permission to amend his complaint to add a claim for denial of access to the courts or file a new case and raise the claim there. 17-4015-RAL, Doc. 31. This Court also detailed the elements McPeek would need to plead to state a claim for denial of access to the courts. 17-4015-RAL, Doc. 31.

McPeek moved to amend his complaint in December 2017, but his proposed amended complaint did not include a claim that Payer denied him access to the courts by revoking his law library privileges. 17-4015-RAL, Docs. 57, 57-1. McPeek filed another amended complaint in

4

July 2018. 17-4015-RAL, Doc. 76. This amended complaint also failed to make any allegations about Payer denying McPeek access to the courts. 17-4015-RAL, Doc. 76.

McPeek eventually settled his claims against Payer and other Yankton County Jail employees. Doc. 59 at ¶ 15. He signed a Release entitled "Release of All Claims" on April 5, 2019, and this Court entered a judgment of dismissal later that month. Doc. 58-4; Doc. 59 at ¶ 15; 17-4015-RAL, Doc. 90. In brief, the Release provided that McPeek agreed to accept $11,400 in exchange for releasing all claims he had against Payer and the other Yankton County Jail defendants. Doc. 58-4. Two paragraphs of the Release are central to Payer's motion for summary judgment. First, the Release stated that McPeek released Payer and the other defendants from

> any and all claims, demands, obligations, actions, causes of action, rights of subrogation and all liability whatsoever for or on account of any and all losses, (including loss of consortium), injuries, damages, costs and expenses including those now or hereafter arising directly or indirectly in consequence of events which allegedly occurred while I was housed at the Yankton County Jail at any time prior to the time of this Release, in particular from January 27, 2017 through June 14, 2017.

Doc. 58-4 at 1. Second, the Release made clear that it applied to the claims McPeek actually brought as well to claims that he could have brought:

> This Release includes, but is not limited to, all claims, allegations, and actions as set forth and alleged in the pleadings filed in the action styled *Travis R. McPeek, Plaintiff, v. Mark Payer* . . . U.S. District Court, Civ. 17-4015 RAL. This Release applies to all claims, pleadings, allegations and actions made in said civil action, and further applies to all claims, allegations and actions which could have been alleged, raised, or litigated in said action.

Doc. 58-4 at 2.

McPeek filed the complaint in this case in May 2020. Doc. 1. The only claim he asserts against Payer concerns the same allegations raised in his June 9, 2017 motion to compel access to the law library. Doc. 1 at 27; Doc. 59 at ¶¶ 21–22. McPeek alleges that Payer asked the Bon

5

Homme County State's Attorney to have his law library access revoked, that the State's Attorney filed a motion to that effect on June 5, 2017, that a state judge granted the motion, and that Payer violated his right to access the courts. Doc. 1 at 27.

## II.     Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if "a reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

## III.     Analysis

McPeek does not challenge the validity or enforceability of the Release. Rather, his arguments against summary judgment focus on the whether his claim against Payer falls within the Release. The Release is a contract, Gores v. Miller, 875 N.W.2d 34, 36 (S.D. 2016), and this Court determines its effect "according to general contract law principles," Cody v. Hillard, 304 F.3d 767, 778–79 (8th Cir. 2002) (citing to South Dakota cases, a contract treatise, and an Eighth

Circuit case when interpreting a settlement agreement in a § 1983 suit from South Dakota). Courts apply the plain and ordinary meaning to language in a contract and will enforce the terms of the contract when they are unambiguous. See Sun Prairie v. Sweeny, 3:02-CV-03030-RAL, 2020 WL 4813358, at *5 (D.S.D. Aug. 19, 2020); JAS Enters., Inc. v. BBS Enters., Inc., 835 N.W.2d 117, 125–26 (S.D. 2013); Bunkers v. Jacobson, 653 N.W.2d 732, 738 (S.D. 2002).

The language of the Release here is not ambiguous and must be enforced according to its terms. The Release states that it applies to "all claims, pleadings, allegations and actions made in [17-4015-RAL], and further applies to all claims, allegations and actions *which could have been alleged, raised, or litigated in said action*." Doc. 58-4 at 2 (emphasis added). McPeek argues that the Release only applies to claims he actually brought during the 2017 case, but that is not a reasonable interpretation of the contract. The Release makes clear that it also applies to any claims McPeek "could have" alleged during the 2017 case, and this Court cannot ignore that phrase when interpreting the contract. See Whyte v. Alliance CAS, LLC, No. 1:21-cv-4958-WMR-JKL, 2022 WL 2389316, at *4 (N.D. Ga. Mar. 11, 2022) (holding that language in offer of judgment stating that offer encompassed all claims "which could have been asserted by Plaintiffs" was not ambiguous); Nelson v. Schellpfeffer, 656 N.W.2d 740, 744 (S.D. 2003) ("An interpretation which gives a reasonable and effective meaning to all the terms [of a contract] is preferred to an interpretation which leaves a part unreasonable or of no effect.").

Because the Release is not ambiguous, the only remaining question is whether McPeek could have raised his claim against Payer during the 2017 case. McPeek makes three arguments for why he could not have done so, none of which are persuasive. His first argument depends on the Prison Litigation Reform Act (PLRA). He argues that he could not have raised his claim against Payer during the 2017 litigation because the PLRA's exhaustion requirement bars prisoners

7

from raising new claims that arise after the action was commenced. The PLRA's exhaustion requirement states that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, Jones v. Bock, 549 U.S. 199, 211 (2007), and prisoners must completely exhaust a claim before raising it in federal court, see Mosley Corr. Care Sols., 671 F. App'x 401, 402 (8th Cir. 2016) (per curiam) (affirming dismissal of claims that the plaintiff did not exhaust until after he initiated his § 1983 action); Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003) (stating that § 1997e(a) "clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement").

But the PLRA's exhaustion requirement would not have prevented McPeek from filing an amended or supplemental complaint during the 2017 case asserting a claim that Payer denied him access to the courts. Rule 15(a) of the Federal Rules of Civil Procedure gives courts discretion to allow amended complaints and Rule 15(d) extends that discretion to allowing supplementation of a complaint to present claims that arose after a lawsuit was filed. Fed. R. Civ. P. 15(d). Either through amendment or supplementation of his complaint, McPeek could have raised his claim against Payer during the 2017 case, as McPeek alleged that Payer had denied him access to the courts to secure dismissal of the claims McPeek had alleged against him in an earlier complaint. 17-4015-RAL, Doc. 28 at 2; see Cash v. Wetzel, 8 F. Supp. 3d 644, 658 (E.D. Pa. 2014) (holding that a prisoner could file a supplemental complaint alleging that corrections officers were retaliating against him for filing the original action); 6A Mary Kay Kane, Federal Practice and Procedure § 1504 (3d ed. April 2022 update) (explaining that Rule 15(d) allows a party to "assert

8

separate or additional claims or defenses arising after commencement of the action, although the courts typically require some relationship between the original and the later accruing material").

McPeek cites one case—Hempstead v. Halley, No. 4:07-cv-513-RH-GRJ, 2011 WL 4374958 (N.D. Fla. Aug. 29, 2011)—to support his argument that the PLRA would have prevented him from raising his claim against Payer during the 2017 case. The court in Hempstead rejected a prisoner's attempt to assert claims that arose after he sued, holding that the PLRA required him to have exhausted these new claims before the suit was commenced. Id. at *5. The Hempstead decision did not discuss Rule 15(a) or (d), but rather cited to the Eighth Circuit's decision in Johnson. Hempstead, 2011 WL 4374958, at *5 (quoting Johnson, 340 F.3d at 627). Johnson concerned whether the PLRA required dismissal of claims that were exhausted by the time of the district court's decision but not when the prisoners filed suit. 340 F.3d at 626. The Eighth Circuit held that § 1997e(a) required prisoners to "exhaust administrative remedies *before* filing suit in federal court," and that "dismissal is mandatory" if "exhaustion was not completed at the time of filing." 340 F.3d at 627.

Three reasons counsel against following Hempstead. First, the Eighth Circuit's decision in Johnson does not require the result reached in Hempstead. After all, Johnson concerned prisoners who filed suit before exhausting their claims, not prisoners attempting to amend or supplement their complaints with exhausted claims that arose *after* they commenced their suit. 340 F.3d at 626. And while Johnson said that prisoners must exhaust administrative remedies "*before* filing suit in federal court," this does not mean that the PLRA bars prisoners from adding new claims that arose and were exhausted after they filed their original complaints. Again, the PLRA states that "[n]o action shall be brought" until administrative remedies are exhausted. § 1997e(a). The Supreme Court has determined that "statutory references to 'action' generally refer

9

to the claim as opposed to the entire lawsuit." Mbonyunkiza v. Beasely, No. 4:17-cv-00293-SMR-SBJ, 2018 WL 10483965, at *3 (S.D. Iowa July 18, 2018) (citing to the Supreme Court's decision in Jones and holding that the Eighth Circuit's decision in Johnson did not preclude a prisoner from adding new claims that arose after he filed his original complaint); see also Mattox v. Edelman, 851 F.3d 583, 595 (6th Cir. 2017) (concluding that the word "action" in § 1997e(a) "is synonymous with the word 'claim'").

Second, Hempstead conflicts with the Supreme Court's decision in Jones. The Supreme Court explained in Jones that courts interpreting the PLRA "should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." 549 U.S. at 212. The Court in Jones rejected several procedural rules the Sixth Circuit had created to advance the PLRA's exhaustion requirement, finding that the text of the PLRA did not require them and that the Sixth Circuit had exceeded the "proper limits on the judicial role" in adopting them. Id. at 202–03. As one court put it, Jones "teaches" that "the usual procedural rules apply to PLRA cases unless the PLRA specifies otherwise." Garrett v. Wexford Health, 938 F.3d 69, 87 (3d Cir. 2019). Since nothing in the PLRA specifies that Rule 15(d) does not apply to cases brought by prisoners, Hempstead erred by holding that prisoners cannot bring exhausted claims that arise after they file suit. See Rhodes v. Robinson, 621 F.3d 1002, 1007 (9th Cir. 2010) ("Congress has never indicated, however, that it intended to do away with Rule 15(d) and supplemental pleadings in PLRA actions.").

Third, Hempstead runs counter to appellate authority on the issue. Indeed, the Third, Sixth, and Ninth Circuits have all held that Rule 15(d) allows prisoners to supplement their complaints to add new claims that arose and became exhausted after the prisoner commenced the action. Mattox, 851 F.3d at 595 (holding that the "PLRA and Federal Rule of Civil Procedure 15 permit

a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim"); Boone v. Nose, 530 F. App'x 112, 113 n.1 (3d Cir. 2013) (per curiam) ("Under the [PLRA], prisoners may file supplemental complaints if the claims in question 1) have truly accrued since the beginning of the suit and 2) are exhausted per 42 U.S.C. § 1997e(a) before the supplement is filed."); Rhodes, 621 F.3d at 104–07 (holding that a prisoner could raise claims contained in second amended complaint even though those claims had yet to arise or be exhausted at the time the prisoner commenced his suit). Although the Supreme Court has not had to rule on this issue, it recently cited to Rhodes, 621 F.3d 1002, when stating that the "original defect" of lack of exhaustion in a prisoner's complaint "was arguably cured by" the prisoner's filing of amended complaints. Ramirez v. Collier, 142 S. Ct. 1264, 1276 (2022).

McPeek also argues that he did not know that Payer was involved in revoking his access to the law library until after he signed the April 2019 release. This is incorrect. McPeek's June 2017 motion to compel access to the law library makes the same allegations against Payer that McPeek now seeks to raise in this case. McPeek therefore knew of Payer's supposed involvement in denying him access to the courts long before he signed the April 2019 release and could have raised his claim against Payer during the 2017 case.

McPeek's last argument is that he lacked the legal knowledge necessary to raise his claim against Payer during the 2017 case. The record does not bear this out though; McPeek cited relevant Supreme Court case law in his June 2017 motion to compel access to the law library, 17-4015-RAL, Doc. 28 at 2, and this Court explained the elements McPeek would need to plead in its order denying this motion, 17-4015-RAL, Doc. 31 at 2. In short, McPeek had all the factual and

legal knowledge he needed to raise his claim against Payer during the 2017 case. Because he could have raised this claim but did not, the Release bars him from doing so now.

## IV.   Conclusion

For the reasons stated above, it is hereby

ORDERED that Payer's Motion for Summary Judgment, Doc. 57, is granted.

DATED this 2nd day of August, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE